**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*12:46 pm, Mar 27, 2014*
**JEFFREY P. COLWELL, CLERK**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO (DENVER)**

| | |
|---|---|
| **JOSEPH J. GOMEZ, on behalf of himself and all others similarly situated,** ) ) ) ) ) **Plaintiff,** ) ) **v.** ) ) **KROLL FACTUAL DATA, INC.** ) ) ) ) **Defendant.** ) ) | Civil Action No. 1:13-cv-00445-WJM **CLASS ACTION** |

## SECOND AMENDED COMPLAINT – CLASS ACTION

### PRELIMINARY STATEMENT

1. This is a consumer class action based upon Defendant Kroll Factual Data Inc.'s ("Kroll" or "Defendant") violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA"). Defendant sells consumer reports that are purported to identify whether a given consumer is included in the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons ("OFAC") list. Defendant fails to maintain and follow reasonable procedures to assure the maximum possible accuracy of that information in its consumer reports about a given consumer's inclusion on the OFAC list before it sells such a report to any third party. It therefore routinely misidentifies innocent Americans, such as Plaintiff, as terrorists, narcotics traffickers, money launderers and other enemies of the United States who are actually on the OFAC list.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue has been transferred to this District.

## PARTIES

4. Plaintiff Joseph Gomez is an adult individual who resides in Silver Springs, Maryland.

5. Defendant Kroll Factual Data, Inc. ("Kroll") is a consumer reporting agency that regularly conducts business in Maryland and which has a principal place of business located at 5200 Hahns Peak Drive, Loveland, CO 80538.

## FACTUAL ALLEGATIONS

**A.    Defendant Fails To Report Consumer Information Accurately**

6. Defendant is the type of consumer reporting agency ("CRA") commonly referred to as a "reseller."

7. Defendant sells consumer reports (commonly called "credit reports") about millions of consumers annually.

8. Defendant is regulated by the FCRA.

9. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

10. In furtherance of that goal, the FCRA mandates that each CRA follow reasonable procedures to assure the maximum possible accuracy of all information in each consumer's file and report. 15 U.S.C. § 1681e(b).

11. An OFAC alert is a notation on a consumer credit report signifying that the subject of the report is purportedly included in the list of the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons, which includes terrorists, money launderers, and narcotics traffickers.

12. Banks and other lending institutions which receive consumer reports with OFAC alerts on them have refused to extend credit to the credit applicants, including Plaintiff, and are unwilling to take the risk of eliminating the applicant as an actual criminal after a CRA has placed an OFAC alert on the applicant's report.

13. OFAC information is subject to the FCRA's maximum possible accuracy standard: "OFAC information included in a consumer report and sold about a consumer falls within the purview of the FCRA, and the 'maximum possible accuracy standard.'" *Cortez*, 617 F.3d at 710.

14. Defendant sells OFAC information as part of its consumer reports.

15. Defendant has developed a product and/or service called "TruAlert" which it promotes as reliable and accurate.

16. TruAlert is embedded within and is one of the initial sections of Defendant's consumer reports. The TruAlert section is usually displayed upon a Kroll consumer report immediately below the personal identifying information and inquiry history of the credit applicant.

17. TruAlert informs the user of the consumer credit report whether the credit applicant's name is a match to the OFAC list.

18. TruAlert searches for matching records and records purportedly "similar" to the applicant's identifying information, including "file variations" and "AKAs."

19. Defendant warns its customers on its website that OFAC information is vital to their businesses and that they should rely upon TruAlert so that they "do not engage in transactions with 'enemies' of the United States." Defendant includes the identical warning in its customer contracts.

20. Defendant's website also acknowledges that its consumer reports assist its customers in "making critical decisions, such as determining whether to make a mortgage or other loan, offer employment, [or] accept new tenants . . . ."

21. Defendant's procedure is to "crosscheck" only parts (including even parts of unverified "AKAs") of the names of credit, employment, or tenant applicants against the OFAC list.

22. Defendant does not crosscheck or otherwise attempt to match with the OFAC list any other item of the applicant's personal identifying information—such as the applicant's date of birth, address, passport number, and/or social security number—even though such identifying information is regularly supplied to Defendant at the time it is preparing a consumer report, including a TruAlert, for the applicant.

23. Further, Defendant's "name only" crosscheck does not require even an exact match between the name of the applicant and the name or alias of any person actually on the OFAC list.

24. Using this matching criteria, Defendant will report an individual as having a record "similar" to that of a person on the OFAC list if but two parts of the names (e.g., "Joseph" *or* "Gomez")—including unverified "AKAs"—of an applicant matches any two parts of the names of an individual on the OFAC list, even if the matching parts occur in separate names or aliases on the OFAC list. For example, "John Peter Phillips" would be reported as "similar" to an OFAC entry for "<u>John</u> Allen Grayson," A/K/A "<u>Peter</u> Allen Grayson."

25. As a result of its very loose, partial-name-only matching criteria, Defendant routinely misidentifies persons, such as Plaintiff, named "Joseph Gomez," with suspected narcotics traffickers, money launderers and/or terrorists such as the individual named "Gabriel Gomez Chavez," who is actually on the OFAC list.

26. The name "Joseph Gomez" is not similar to the name "Gabriel Gomez Chavez."

27. Plaintiff Gomez's personal identifying information, which was known to Defendant at the time of Plaintiff's credit application, and as a result of Plaintiff's credit application, is absolutely not similar and bears no resemblance whatsoever to personal identifying information for "Gabriel Gomez Chavez," which is readily available on the U.S. Treasury Department's OFAC list.

28. Defendant also misidentifies other innocent Americans with suspected narcotics traffickers, money launderers and/or terrorists actually on the OFAC list.

29. Defendant's reporting of OFAC alert information is not accidental, but a result of deliberately designed policies and procedures.

30. Defendant's matching procedures are determined by computer algorithms and are a result of deliberate but imprecise matching criteria.

31. Further, Defendant has deliberately determined that it will not require confirmation, before a consumer report is prepared and sold to a lender, of any possible match between a credit applicant and a hit to the OFAC list according to its matching criteria, in contravention to clearly established authority from the Court of Appeals. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010) (finding that there are "inherent dangers in including any information in a credit report that *the credit reporting agency cannot <u>confirm</u> is related to a particular consumer*.") (emphasis added).

32. Moreover, Defendant will not use any other personal identifier, such as date of birth, passport number, Social Security Number, or place of residence, even when it is available, to exclude an applicant as a possible hit to the OFAC list, again in contravention to clearly established authority from the Court of Appeals. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010).

33. Specifically, the Court of Appeals for the Third Circuit in *Cortez* held that the jury was justified in finding liability under FCRA section 1681e(b) in that case because of "an incontinency between the identifying information provided by [the CRA], for example, [plaintiff] Cortez's birth date, and the information on the [OFAC] List." *Cortez*, 617 F.3d at 709.

34. The Third Circuit also held that FCRA section 1681e(b) liability could be found due to several "discrepancies" between the CRA's and OFAC's records regarding "last name, middle name . . . date of birth . . . [and] citizenship." *Id.* at 710.

35. The Third Circuit went as far as to find that the CRA's procedures were "reprehensible" because the CRA did not take the "utmost care" in assuring accuracy and did not even compare the plaintiff's date of birth to the very different date of birth on the OFAC record that it placed on her report. *Id.* at 723.

36. Although the *Cortez* opinion issued in 2010, and individuals within Kroll specifically discussed the decision's potential impact on Kroll's OFAC reporting procedures, and even studied making changes in Kroll's procedures as a result, Defendant did not make any changes in the way in which it searches or reports OFAC data as a result of *Cortez*.

37. Indeed, Defendant's Compliance Officer testified at her deposition in this case that she could not be certain she even read the *Cortez* opinion.

38. And while the Third Circuit certainly considers reporting OFAC information about consumers to be an important concern for CRAs, when asked whether he considered being linked to a name in the OFAC database a serious matter, Defendant's former Chief Information Officer testified in this case that he "really never ha[s] given it ***any thought***."

39. Other CRAs have entered into consent agreements and consent orders requiring the matching of up to eight or nine items of personal identifying information before matching any data to a particular consumer's report. *See, e.g.*, *Fed. Trade Comm'n v. TRW, Inc.*, No. 3-91CV2661-H, 784 F. Supp. 361, at 362-36 (N.D. Tex. Dec. 16, 1991) (requiring "full identifying information" in preparation of consumer reports as to avoid mixed files; "full identifying information" is defined as "full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; <u>and</u> social security number.") (emphasis added). *See also State of Ala., et al., v. Trans Union Corp.*, No. 92-C-7101 (N.D. Ill. Dec. 26, 1992); *Equifax Credit Info. Servs., Inc. Proposed Consent Agreement with Analysis to Aid Public Comment*, 60 Fed. Reg. 35 (proposed Feb. 22, 1995).

40. Nevertheless, Defendant continues to use a part of name-only matching procedure which leads to mismatches, mixed files, and mistakes.

41. Apart from Defendant's non-compliance with the FCRA's mandate that it use reasonable procedures to ensure the maximum possible accuracy of the information it reports, discovery has revealed that Defendant fails to comply with the FCRA in other respects as well.

42. If a consumer contacts Defendant and requests his or her annual, free file disclosure permitted by the FCRA, whatever information Defendant provides in response never includes OFAC information, despite the fact that Defendant provides to its customers OFAC information on tens of thousands of consumers every month.

43. Further, when Defendant provides a consumer report to a lender, the report contains OFAC information automatically and without the need for the lender to request it. Defendant also provides the lender with a "consumer copy" of the Kroll report on the consumer, which Defendant expects the lender to provide to the consumer if the lender wishes. The "consumer copy" of the report does not include the OFAC information reported to the lender.

44. Even should consumers somehow become aware of the inaccurate OFAC information Defendant inevitably reports about them, Defendant does not permit consumers to dispute or have corrected inaccurate OFAC information that Defendant reports.

45. Defendant's Compliance Officer testified in this case that Defendant at one time—in response to the *Cortez* decision—considered developing a system that permitted Defendant to remove inaccurate OFAC data from consumer reports, but Defendant never implemented this ability.

**B.** **The Experience Of The Representative Plaintiff**

46. Plaintiff is but one consumer about whom Defendant sold inaccurate OFAC information.

47. On or about January 16, 2012, Plaintiff applied for a home loan through the Waterstone Mortgage Corporation.

48. On the next day, the Waterstone Mortgage Corporation ordered a consumer report known as "Residential Merged Credit Report" from Defendant concerning Plaintiff. A partially redacted copy of that January 17, 2012 report is attached hereto as Exhibit A.

49. Residential Merged Credit Report included a "TruAlert" section, which began on its very first page.

50. Defendant's January 17, 2012 Residential Merged Credit Report about Plaintiff sold to Waterstone Mortgage Corporation identified an "AKA" record for Plaintiff allegedly similar to a record on the OFAC list.

51. The report stated that Plaintiff uses the AKA or alias "Jose," but that is inaccurate. Plaintiff does not go by or use the name "Jose" as an AKA or otherwise.

52. Defendant's Residential Merged Credit Report alerted Waterstone Mortgage Corporation that Plaintiff was a possible match to "Gabriel Gomez Chavez," with a date of birth August 1962, of Jalisco, Mexico, and with a U.S. social security number ending in 9593.

53. "Gabriel Gomez Chavez" has several aliases according to the OFAC list, but none of those aliases are Joseph J. Gomez, Plaintiff's actual name.

54. Plaintiff is not "Gabriel Gomez Chavez," or related to such a person, was not born in Mexico, never lived in Mexico, and Plaintiff is not on the OFAC list.

55. Plaintiff provided as part of his credit application, and Defendant received, his true name, address, social security number and date of birth.

56. Plaintiff's name does not match that of "Gabriel Gomez Chavez," or any of the "Gabriel Gomez Chavez" aliases, as listed on the actual OFAC list.

57.   Nor is Plaintiff's name similar to "Gabriel Gomez Chavez."

58.   Plaintiff's address does not match that of "Gabriel Gomez Chavez," as partially listed on the actual OFAC list.

59.   Nor is Plaintiff's Maryland address even remotely similar to the "Gabriel Gomez Chavez" addressees in Mexico.

60.   Plaintiff's date of birth does not match that of "Gabriel Gomez Chavez," and is not similar. In fact, Plaintiff's date of birth is more than 25 years later than the August 1962 date of birth as listed on the actual OFAC list for "Gabriel Gomez Chavez."

61.   Plaintiff's social security number does not match that of "Gabriel Gomez Chavez," as listed on the actual OFAC list, and is not even close to similar.

62.   In fact Plaintiff's social security number differs for all nine digits with the social security number listed on the actual OFAC list for "Gabriel Gomez Chavez."

63.   All of this information, and more, was available to Defendant before it sold its report about Plaintiff to Waterstone Mortgage Corporation.

64.   Nevertheless, Defendant's TruAlert product identified Plaintiff as a possible match to the suspected narcotics trafficker, money launderer and/or terrorist named "Gabriel Gomez Chavez," who is actually on the OFAC list.

65.   Defendant associated Plaintiff with the OFAC list because only one of its three data suppliers (the national consumer reporting agencies) reported an AKA for Joseph Gomez of "Gomez, Jose," and the parts "Jose" from the AKA and "Gomez" matched two parts in two separate names/aliases reported on the OFAC list for "Gabriel Gomez Chavez":

Gonzalez Quiarte Eduardo

Gonzalez Quiarte Lalo

    Gonzalez Quiarte **Jose**

    Gonzalez Lopez Gregorio

    Orellana Erazo Hector Manuel

    **Gomez** Chavez Gabriel

  66. Waterstone Mortgage Corporation did not offer a home loan to Plaintiff after reviewing his consumer report issued by Defendant on January 17, 2012, and indeed declined his application.  Plaintiff was not offered a loan until approximately one year later and only after Defendant removed the harmful OFAC alert for Plaintiff's credit report.

  67. The OFAC TruAlert information of Plaintiff's January 17, 2012 Kroll report is not true, accurate, or reliable.

  68. Further, the OFAC TruAlert information of Plaintiff's January 17, 2012 Kroll report harmed Plaintiff's reputation and caused him fear and emotional distress.

  69. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

  70. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CLASS ACTION ALLEGATIONS

  71. Plaintiff brings this action on behalf of the following Class:

All legal residents of the United States of America for whom Kroll issued a Credit Report ("Report") after September 17, 2010, containing an "OFAC Compliance" section with the notice that "records are similar to the following record(s) in

OFAC's SDN list," where (1) there were three or more names from the OFAC SDN list displayed on the Report, (2) no more than two parts of the individual Class Member's name(s), including any "AKA(s)," were a match with any of the OFAC SDN names displayed on the Report, (3) the two matches were with only a part of two separate OFAC SDN names on the Report, (4) and there was no other matching data for the individual Class Member's data on the Report with information displayed on the Report from the OFAC SDN list, including place of residence, birthdate, Social Security number, and/or passport number.

72. Plaintiff brings this action on behalf of the following Subclasses:

(a) All persons residing in the United States and its Territories with the first name "Joseph" or "Jose" and the last name "Gomez" who had a consumer report sold about them by Defendant to any third party which included an OFAC record, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case; and/or

(b) All persons residing in the United States and its Territories about whom Defendant sold a consumer report to any third party which included a TruAlert entry for Gabriel Gomez Chavez, with a date of birth August 1962 and with a U.S. social security number ending in 9593, but excluding the Mexican national Gabriel Gomez Chavez, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case.

73. Excluded from the Classes defined above are all employees of Kroll, attorneys for the Parties, and any Judge to whom this case is assigned.

74. The Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Classes number in the hundreds or thousands.

75. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' files with respect to OFAC information.

76. Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

77. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

78. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

79. Whether Defendant violated the FCRA can be easily determined by Defendant's policies and a ministerial inspection of Defendant's business records.

80. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendant's records.

## CLAIM

### COUNT I - VIOLATION OF THE FCRA § 1681e(b)

81. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

82. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully failing to maintain and follow reasonable procedures to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b).

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Classes; that judgment be entered for Plaintiff and the Classes against Defendant for statutory, actual and punitive damages for violation of 15 U.S.C. §1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o; that the Court award equitable and injunctive relief as may be proper; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and that the Court grant such other and further relief as may be just and proper.

## **JURY TRIAL DEMAND**

83. Plaintiff demands trial by jury on all issues.

Dated: November 15, 2013

        Respectfully submitted,

        **FRANCIS & MAILMAN, P.C.**

        BY:    */s/ John Soumilas*
        JAMES A. FRANCIS
        JOHN SOUMILAS
        DAVID A. SEARLES
        Land Title Building, 19th Floor
        100 South Broad Street
        Philadelphia, PA 19110
        (215) 735-8600

        Michael A. Caddell
        Cynthia B. Chapman
        Craig C. Marchiando
        **CADDELL & CHAPMAN**
        1331 Lamar, Suite 1070
        Houston, TX 77010
        Telephone: (713) 751-0400
        Facsimile: (713) 751-0906

        *Attorneys for Plaintiff*